Roberto Hernandez MIRANDA,
Plaintiff-Appellant,

v.

CLARK COUNTY, NEVADA; Morgan Harris; Thomas Rigsby,
Defendants-Appellees.

No. 00-15734.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 18, 2001.

Filed Feb. 8, 2002.

J. Douglas McCalla (briefed and argued), Spence, Moriarity & Schuster, Jackson, Wyoming, for the plaintiff-appellant.

Thomas D. Beatty (briefed and argued), Law Offices of Thomas D. Beatty, Las Vegas, Nevada, for defendant-appellee Morgan Harris.

Gloria J. Sturman (argued) and Lance A. Maningo (briefed), Edwards, Hale, Sturman, Atkin & Cushing, Ltd., Las Vegas, Nevada, for defendant-appellee Thomas Rigsby.

Janson F. Stewart (briefed and argued), District Attorney's Office, Las Vegas, Nevada, for defendant-appellee Clark County.

Before: SNEED, TROTT, and TALLMAN, Circuit Judges.

TROTT, Circuit Judge:

## OVERVIEW

We are asked to decide whether an indigent client in a criminal case may resort to the federal civil rights statute, 42 U.S.C. § 1983, to challenge the manner in which

he was represented by his public defender. We answer that question in the negative.

Roberto Hernandez Miranda ("Miranda") brought this action under § 1983 against Clark County, Nevada (the "County"), the County's public defender, Morgan Harris ("Harris"), and deputy public defender, Thomas Rigsby ("Rigsby"), alleging the deprivation of his constitutional rights to confrontation, due process, and effective assistance of counsel. The district court dismissed the claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

On appeal, Miranda contends the district court (1) erred in determining that Rigsby did not act under color of state law as required by § 1983, and (2) misapplied the pleading requirements in holding that he failed to state a claim against Harris and the County for alleged unconstitutional policies.

We have jurisdiction over this timely appeal pursuant to Fed.R.Civ.P. 54(b). We hold that Rigsby, in defending Miranda, performed the traditional functions of a defense attorney and, thus, did not act under color of state law for purposes of § 1983. Miranda's claims against the remaining defendants fail because he attacks policies that are not unconstitutional. Accordingly, we affirm the district court's dismissal of Miranda's claims against his former public defender, the public defender's supervisor, and the county agency that employed them.

## BACKGROUND

On April 1, 1982, following a homicide investigation by the Las Vegas Metropolitan Police Department, Miranda was charged with the following crimes in connection with the death of Manuel Torres:

first degree murder with a deadly weapon; robbery with a deadly weapon; and larceny. Miranda was represented in his capital case by deputy public defender Rigsby, a recent law school graduate who passed the Nevada bar in late 1980 and began work in the County public defender's office in February of 1981. Rigsby had no prior experience defending a murder suspect.

Miranda vigorously maintained his innocence from the outset, and supplied Rigsby with the names of numerous people who could have testified on his behalf or provided exculpatory evidence. According to Miranda's complaint, Rigsby's approach to contacting or subpoenaing these potential defense witnesses and investigating other leads ranged from the halfhearted to the nonexistent. Miranda alleged that "[o]ut of more than *forty* possible witnesses, Rigsby interviewed *three,* and *did not manage to serve a subpoena on a single witness.*" Miranda was equally critical of Rigsby's performance during trial, characterizing it as a succession of missed opportunities to exonerate Miranda and incriminate others. In August 1981, a jury found Miranda guilty of all charges. He was later sentenced to death.

Miranda continued to contest his conviction and sentence while in jail, filing several petitions for writs of habeas corpus. In February 1996, his sustained campaign for postconviction relief finally bore fruit when the Nevada Supreme Court overturned his conviction due to the ineffectiveness of Rigsby's counsel. The State declined to re-prosecute, and Miranda was released from jail.

Later, Miranda brought suit against Rigsby, Harris, and the County, for alleged violations of his constitutional rights under § 1983.[1] In his action against Rigs-

---

**1.** Miranda's original complaint named additional defendants and additional causes of action that are not at issue on this appeal.

Remaining before the district court are claims against the investigating detectives for the allegedly negligent police investigation that re-

by, Miranda claimed that Rigsby's failure to adequately investigate, prepare for, and defend his case demonstrated a deliberate indifference to and callous disregard for Miranda's constitutional rights, including his rights to confrontation, compulsory process, due process and the effective assistance of counsel. Rigsby moved to dismiss, claiming he did not act under color of state law and, thus, could not be liable under § 1983. The district court agreed, and dismissed Miranda's claim.

In his actions against the remaining defendants, Harris and the County, Miranda asserted claims for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In his *Monell* action, Miranda asserted that Harris, as the County's official policymaker, instituted a policy for the public defender's office whereby resources were allocated to a criminal defendant's case based on the defendant's performance on a polygraph test. Fewer resources were allocated to the investigation for and representation of a criminal defendant whose polygraph results suggested guilt. Miranda contended that because he performed poorly on his polygraph, the public defender's office, pursuant to the alleged policy, provided a "minimal and inadequate investigation" and "substandard defense" which denied his rights to due process, confrontation, effective assistance of counsel, and a fair trial.

In his second action, Miranda contended that the public defender's office had a practice of assigning inexperienced attorneys to defend defendants charged with serious felonies. The County's failure to

train adequately its inexperienced attorneys, says Miranda, evinced deliberate indifference to Miranda's constitutional right to the effective assistance of counsel, and constituted actionable conduct under the *City of Canton* line of cases.

The district court granted Harris's and the County's motions to dismiss on the grounds that Miranda alleged insufficient facts to support his claims. Because causes of action remained between Miranda and other parties not relevant to this appeal, he moved for certification under Fed.R.Civ.P. 54(b) to expedite the appeal of his dismissed claims against Rigsby, Harris, and the County. The district court granted the motion, and this appeal followed.

## STANDARD OF REVIEW

We review de novo the district court's orders to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. *See Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1139 (9th Cir.1996). While we accept as true all material allegations and construe them in the light most favorable to Miranda, conclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim. *See id.* at 1140.

## DISCUSSION

**I. Because Rigsby Did Not Act Under Color of State Law, The District Court Properly Dismissed Miranda's § 1983 Claim Against Him**

 To state a claim against Rigsby under § 1983, Miranda must allege two essential elements: (1) deprivation of a right secured to him by the Constitution or laws of the United States; and (2) that Rigsby committed the deprivation while acting under color of state law.[2] *See West*

sulted in the arrest and prosecution of the wrong man.

**2.** Title 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United

*v. Atkins,* 487 U.S. 42, 48–49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Ove v. Gwinn,* 264 F.3d 817, 824 (9th Cir.2001). A person acts under color of state law only when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); *McDade v. West,* 223 F.3d 1135, 1139–40 (9th Cir.2000).

 In determining whether Rigsby acted under color of state law, we are guided by the Supreme Court's decision in *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). There, the Court took a "functional approach," holding that whether a public defender acts under color of state law in a particular context depends on the nature of the duties he performs. *See Polk County,* 454 U.S. at 319–20, 102 S.Ct. 445. Thus, "a public defender does not act under color of state law when performing a lawyer's traditional functions"—e.g., "enter[ing] 'not guilty' pleas, mov[ing] to suppress State's evidence, object[ing] to evidence at trial, cross-examin[ing] State's witnesses, and mak[ing] closing arguments." *Id.* at 325, 320, 77 S.Ct. 1064. The Court reasoned that a public defender serves his traditional, and primary, role by "advancing the undivided interests of his client," an "essentially[ ] private function, traditionally filled by retained counsel, for which state office and authority are not needed." *Id.*

at 318–19, 77 S.Ct. 1064 (internal quotations omitted).[3]

Because the public defender in *Polk County* functioned as the State's adversary, "exercis[ing] her] independent judgment on behalf of the client," she did not act under color of state law and, thus, was not liable under § 1983. *Polk County,* 454 U.S. at 321, 102 S.Ct. 445.

The Supreme Court has not passed on whether a public defender's pre-trial decisions involving the interview and subpoenaing of witnesses are traditional functions and, thus, shielded from liability under § 1983. The Court, however, has considered the liability of state prosecutors under § 1983 for similar actions. In so doing, the Court has repeatedly applied its functional analysis which "looks to 'the nature of the function performed, not the identity of the actor who performed it.'" *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (quoting *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).

In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), for example, the Court addressed the liability of state prosecutor Pachtman under § 1983 for his alleged knowing use of false testimony and suppression of exculpatory evidence in the prosecution and conviction of a criminal defendant. The Court held that "[Pachtman's] activities were intimately associated with the judicial phase of the criminal process, and thus were functions

States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

**3.** The Supreme Court elaborated on this same point in *Ferri v. Ackerman,* 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979):

[T]he primary office performed by appointed counsel parallels the office of privately retained counsel....[H]is duty is not to the public at large, except in that general way. His principal responsibility is to serve the undivided interests of his client. Indeed, an indispensable element of the effective performance of his responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation.

*Id.,* 444 U.S. at 204, 100 S.Ct. 402.

to which the reasons for absolute immunity apply with full force." *Imbler*, 424 U.S. at 430, 96 S.Ct. 984. The Court's holding contemplated clearly a lawyer's conduct outside the courtroom: "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution .... [including] which witnesses to call .... [and] the obtaining, reviewing, and evaluating of evidence." *Id.* at 431 n. 33, 96 S.Ct. 984.

■ [4] The Court made a similar observation in *Buckley*: "acts undertaken by a prosecutor *in preparing for the initiation of judicial proceedings or for trial*, and which occur in the course of his role as an advocate for the State"—including *"evaluating . evidence and interviewing witnesses as he prepares for trial"*—"are entitled to the protections of absolute immunity." *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606 (emphasis added); *see also Kalina v. Fletcher*, 522 U.S. 118, 129, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); *Burns v. Reed*, 500 U.S. 478, 487, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).

Our task, then, is to determine whether Rigsby's decisions concerning whom to interview, investigate, and subpoena fall under the rubric of a lawyer's "traditional functions." Miranda urges us to hold that they do not, arguing that Rigsby functioned as a state administrator or investigator, rather than a private attorney. The following language from *Polk County* serves as the foundation for Miranda's strained argument:

In concluding that [the public defender] did not act under color of state law in exercising her independent professional judgment in a criminal proceeding, we do not suggest that a public defender

never acts in that role. In *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), for example, we found that a public defender so acted when making hiring and firing decisions on behalf of the State. *It may be—* although the question is not present in this case—*that a public defender also would act under color of state law while performing certain administrative and possibly investigative functions.*

*Polk County*, 454 U.S. at 324–25, 102 S.Ct. 445 (emphasis added). Miranda contends the Supreme Court carved out an exception for civil liability when public defenders perform administrative and investigative tasks. Hence, he argues, Rigsby's "administrative" decision not to assign an investigator to "locate, interview, or subpoena" numerous witnesses, and his failure to properly "investigate" potential witnesses fall under the putative exceptions in *Polk County*.

■ Since *Polk County*, the Supreme Court has not confirmed whether civil liability exists for a public defender's administrative or investigative functions, let alone defined the contours of those functions. However, we need not address these issues today because we hold that whatever functions the Supreme Court had in mind, they were not those performed by Rigsby.

We observe, first, that Rigsby, though employed by the County, functioned as its adversary; he acted at all times on behalf of Miranda. Rigsby's conduct was not, nor could it have been, dictated by any State-imposed guidelines.[4] *See id.* at 321, 77 S.Ct. 1064. Rather, his decisions to assign *vel non* an investigator to track down par-

---

4. The ABA Code of Professional Conduct provides: "A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in render-

ing such legal services." DR 5–107(B) (2001). Nevada has adopted this rule verbatim in its Code of Professional Conduct. *See* Nev. Supreme Court Rule 188.3 (2001).

ticular leads or witnesses advanced the interests of only one party—Miranda. Rigsby's conduct is, thus, easily distinguished from that of the public defender in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), who was deemed a state actor when making personnel decisions for the public defender's office. Branti was sued in his role as administrator, not lawyer. His hiring and firing decisions served the interests of his county employer and were the type of conduct easily amenable to administrative direction. Rigsby's actions were not administrative in these ways.

To accept Miranda's position to the contrary would require our turning a blind eye to common sense in evaluating the public defender's function. It cannot be seriously disputed that Rigsby's pre-trial decisions confront every criminal defense attorney, whether privately retained or publicly assigned, during the course of representation. It is equally evident that Rigsby's pre-trial decisions objected to by Miranda were just as "traditional," and essential to Miranda's defense, as those performed during trial. One doesn't have to be steeped in the works of Erle Stanley Gardner to recognize that a lawyer is hired as much for the exercise of his pre-trial, professional judgment concerning the evaluation and interviewing of witnesses, as for his prowess in front of the judge and jury. Miranda characterizes Rigsby's conduct as "administrative" or "investigative." But if *Polk County* teaches us anything, it instructs us to focus on Rigsby's functions, not Miranda's dubious labels of them. *Cf. Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 679 (9th Cir.1984) (holding "insofar as [the district attorney's] decision to release the home can be characterized as investigative" or administrative, the decision was made "pursuant to the preparation of the prosecutor's case" and, thus, "warrants absolute immunity"). Heeding that lesson, we hold that Rigsby performed a lawyer's traditional duties in deciding which witnesses to investigate, interview, and subpoena, and which defense leads to pursue. We reject Miranda's arguments to the contrary.

Finally, it may well be that Rigsby's representation was wholly inadequate, but § 1983 does not create a remedy for all conduct that deprives a person of protected rights; its reach is limited to state action.

> Thus, even though the defective performance of defense counsel may cause the trial process to deprive an accused person of his liberty in an unconstitutional manner, *Cuyler v. Sullivan*, 446 U.S. 335, 342–345, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the lawyer who may be responsible for the unconstitutional state action does not himself act under color of state law within the meaning of § 1983. *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981).

*Briscoe v. LaHue*, 460 U.S. 325, 329 n. 6, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Thus, even under our liberal standard of review, Miranda's complaint cannot support a finding that Rigsby acted under color of state law.

## II. Miranda Fails To Allege the Existence of An Actionable Policy Against Harris and the County

### A. Liability Under Monell and City of Canton

The parties agree that *Monell* and its progeny govern Miranda's claims of municipal liability under § 1983. Under this line of decisions a local government may be liable only where the municipality *itself* causes the constitutional violation. *See Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Respondeat superior and vicarious liability are not cognizable

theories of recovery against a municipality. *See id.; Duvall v. County of Kitsap,* 260 F.3d 1124, 1141 (9th Cir.2001). Instead, a *Monell* claim exists only where the alleged constitutional deprivation was inflicted in "execution of a government's policy or custom." *Monell,* 436 U.S. at 694, 98 S.Ct. 2018.

 A municipality's policy of inaction-e.g., the failure to train its employees-may also constitute grounds for suit where the failure "amounts to deliberate indifference to the rights of persons" impacted by the inaction. *City of Canton,* 489 U.S. at 388, 109 S.Ct. 1197. *See also Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir.1992). Deliberate indifference to a person's constitutional rights occurs when the need for more or different action, "is so obvious, and the inadequacy[of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *Oviatt,* 954 F.2d at 1477–78 (quoting *City of Canton,* 489 U.S. at 390, 109 S.Ct. 1197). *See also Bd. of the County Comm'rs,* 520 U.S. at 410, 117 S.Ct. 1382 (" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."). The rationale is that local governmental inaction rising to the level of deliberate indifference reflects a conscious choice to violate the victim's rights and, thus, represents an actionable city "policy" under § 1983. *City of Canton,* 489 U.S. at 389, 109 S.Ct. 1197; *Lee v. City of Los Angeles,* 250 F.3d 668, 681 (9th Cir.2001). For liability to attach, a *Monell* plaintiff must establish the alleged inaction is so "closely related to the ultimate injury" as to constitute the "moving force behind" it. *City of Canton,* 489 U.S. at 391, 389, 109 S.Ct. 1197. *See also Lee,* 250 F.3d at 681 ("[A] plaintiff must show that his or her constitutional 'injury would have been avoided' had the governmental entity properly trained its employees.") (citations omitted).

 Miranda alleges that the remaining appellees, Harris and the County, enacted two policies that violated his Sixth Amendment right to effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Though the district court based its dismissal on pleading infirmities, we are not bound by the court's reasoning and may affirm on any ground having support in the record. *See Tyler v. Cisneros,* 136 F.3d 603, 607 (9th Cir.1998). Assuming, as we must on an appeal of a district court's dismissal under Fed.R.Civ.P. 12(b)(6), that both alleged policies existed, we hold that neither policy, as alleged, is unconstitutional. The district court, thus, properly dismissed these claims.

**B. It is Not Unconstitutional For the County to Base Its Allocation of Resources on the Results of a Criminal Defendant's Polygraph Test**

 In his complaint, Miranda alleged the existence of a County policy whereby the public defender's office considers a criminal defendant's performance on a polygraph test to decide what resources will be expended on that defendant's behalf. Miranda contended he "allegedly performed poorly on the polygraph" and "[c]onsequently, minimal investigation was performed prior to and during" trial. The resulting, allegedly inadequate representation violated his Sixth Amendment rights, and led to his wrongful conviction, death sentence, and nearly fourteen year imprisonment. This policy, he continues, is actionable under *Monell.*

Miranda concedes that the County public defender's office does not violate the Constitution by allocating different amounts of resources to the defense of different criminal defendants. Nor does

Miranda contest the validity of apportioning resources based on the significance of a particular case or its anticipated success at trial. Miranda argues, however, that the County's policy of using a polygraph to help make these decisions violated the Constitution when it deprived him, as it allegedly did here, of his Sixth Amendment right to effective assistance of counsel.

Yet, Miranda fails to suggest *why* the use of a polygraph transforms what Miranda admits to be a constitutionally valid policy—the public defender's discretionary apportionment of resources—into one ripe for *Monell* liability. A polygraph test is just another factor—like, e.g., the existence of inculpatory evidence, the applicability of favorable case law, a defendant's criminal history—which can help a public defender to plan his client's defense and to predict the possible outcome of the case. As noted above, Miranda admits that a public defender's office has the discretion to assess the priorities among its cases and allocate resources as it sees fit.

Furthermore, the Supreme Court has held that "[i]ndividual jurisdictions ... may reasonably reach differing conclusions as to whether polygraph evidence should be admitted." *United States v. Scheffer*, 523 U.S. 303, 312, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). In this Circuit, "[t]he admission of unstipulated polygraph evidence at sentencing is left to the sound discretion of the trial court." *United States v. Jordan*, 256 F.3d 922, 933 n. 7 (9th Cir.2001) (internal quotations omitted); *United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir.1997) (holding that *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), overruled any *per se* rule preventing the admission of unstipulated polygraph evidence). If polygraph *evidence* may be used at trial, then its use by the County to assist the decision-making process here

under review is clearly not constitutionally suspect. Moreover, it is common knowledge that federal agencies such as the Federal Bureau of Investigation and the Central Intelligence Agency routinely use the polygraph as a tool in many different arenas, as may private employers in the limited circumstances outlined in the Employee Polygraph Protection Act of 1988. *See* 29 U.S.C. § 2006 (2001). Accordingly, we hold that the County public defender's use of a polygraph in this context is constitutionally irrelevant. Miranda's *Monell* action against Clark County based on this policy was, thus, properly dismissed.

## C. The County's Failure to Train the Attorneys it Assigned to Represent Criminal Defendants is not Actionable Because the Failure Does Not Evince Deliberate Indifference to Their Constitutional Rights

Miranda alleges that Harris and the County deprived him of his Sixth Amendment right to effective assistance of counsel by failing to train the County's deputy public defenders. As noted above, to establish deliberate indifference, "the need for training must be obvious and violation of constitutional rights must be a highly predictable consequence." *Plumeau v. Sch. Dist. # 40*, 130 F.3d 432, 439 n. 4 (9th Cir.1997) (citing *Bd. of the County Comm'rs*, 520 U.S. at 410–11, 117 S.Ct. 1382). Rigsby is a law school graduate, a member in good standing of the state bar, and was hired for a deputy public defender position on the basis of his perceived abilities. Accordingly, the County's assignment of him to represent Miranda did not evince deliberate indifference to Miranda's right to effective assistance of counsel. The Sixth Amendment does not guarantee to Miranda, or any criminal defendant, the assistance of Perry Mason. That Rigsby had no previous experience defending a criminal defendant convicted of a serious

crime is, without more, of no constitutional moment. *Cf. City of Canton,* 489 U.S. at 390 n. 10, 109 S.Ct. 1197 (holding that a claim might lie where the need to train is "so obvious" that the failure to do so could properly be characterized as "deliberate indifference" to constitutional rights). On these facts, the district court properly dismissed this claim.

AFFIRMED.