*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0351p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HAMILTON'S BOGARTS, INC.; KATHLEEN POLZIN,
        *Plaintiffs-Appellants,*

*v.*

STATE OF MICHIGAN; MICHIGAN LIQUOR CONTROL
COMMISSION; JENNIFER GRANHOLM; NIDA SAMON,
        *Defendants-Appellees.*

No. 06-1436

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-10081—Julian A. Cook, Jr., District Judge.

Argued:  January 31, 2007

Decided and Filed:  August 30, 2007

Before:  MARTIN, BATCHELDER, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Timothy P. Murphy, St. Clair Shores, Michigan, for Appellants.  Rosendo Asevedo, Jr., MICHIGAN LIQUOR CONTROL COMMISSION, Farmington, Michigan, for Appellees. **ON BRIEF:**  Timothy P. Murphy, St. Clair Shores, Michigan, Michael L. Donaldson, Livonia, Michigan, for Appellants.  Rosendo Asevedo, Jr., MICHIGAN LIQUOR CONTROL COMMISSION, Farmington, Michigan, for Appellees.

  MARTIN, J., delivered the opinion of the court, in which McKEAGUE, J., joined. BATCHELDER, J. (p. 9), delivered a separate concurring opinion.

---

## OPINION

---

  BOYCE F. MARTIN, JR., Circuit Judge.  Plaintiffs Hamilton's Bogarts, Inc. — operator of an adult entertainment establishment with a Michigan liquor license — and Kathleen Polzin — an exotic dancer — brought this lawsuit to challenge a Michigan statute and regulations that prohibit entities with liquor licenses from allowing exotic dancers to perform fully nude, or mimick sexual acts, on stage.  The district court denied plaintiffs' requests for injunctive relief.  For the following reasons, we **REVERSE** the district court's decision.

I.

On April 14, 1998, the Michigan legislature passed the challenged statute, which only appears relevant for its definition of the terms "topless" and "nudity"[1]:

> As used in this section:
> (a) "Nudity" means exposure to public view of the whole or part of the pubic region; the whole or part of the anus; the whole or part of the buttocks; the whole or part of the genitals; or the breast area including the nipple or more than 1/2 of the area of the breast.
> (b) "Topless activity" means activity that includes, but is not limited to, entertainment or work-related activity performed by any of the following persons on the licensed premises in which the female breast area, including the nipple, or more than 1/2 of the area of the breast, is directly exposed or exposed by means of see-through clothing or a body stocking:
>> (i) A licensee.
>> (ii) An employee, agent, or contractor of the licensee.
>> (iii) A person acting under the control of or with the permission of the licensee.

Mich. Comp. Laws § 436.1916 (15). The statute requires that holders of liquor licenses are required to obtain a permit from the state Liquor Control Commission before allowing topless activity to be performed,[2] but does not otherwise appear to prohibit nudity or topless activity on its own terms. The Commission had passed the following two rules in 1981 that specifically deal with such activity:

Mich. Admin. Code 436.1409 ("Rule 9"):

> (1) An on-premise licensee shall not allow in or upon the licensed premises a person who exposes to public view the pubic region, anus, or genitals or who displays other types of nudity prohibited by statute or local ordinance.

> (2) An on-premises licensee shall not allow in or upon the licensed premises the showing of films, television, slides, or other electronic reproductions which depict scenes wherein any person exposes to public view the pubic region, anus, or genitals or displays other types of nudity prohibited by statute or local ordinance. This prohibition does not apply to any publicly broadcast television transmission from a federally licensed station.

Mich. Admin. Code 436.1411 ("Rule 11"):

---

[1] The statute was amended on December 16, 2005, but the amendment did not change the definitions of "topless" or "nudity."

[2] The statute's licensing requirement provides that:

[a]n on-premises licensee shall not allow topless activity on the licensed premises unless the licensee has applied for and been granted a topless activity permit by the commission. This section is not intended to prevent a local unit of government from enacting an ordinance prohibiting topless activity or nudity on a licensed premises located within that local unit of government. This subsection applies only to topless activity permits issued by the commission to on-premises licensees located in counties with a population of 95,000 or less.

Mich. Comp. Laws § 436.1916 (3).

(1)  An on-premise licensee shall not allow in or upon the licensed premises a person who performs, or simulates the performance of, sexual intercourse, masturbation, sodomy, bestiality, fellatio, or cunnilingus.

(2) An on-premises licensee shall not allow in or upon the licensed premises the showing of films, television, slides, or other electronic reproductions which depict scenes wherein a person performs, or simulates performance of, sexual intercourse, masturbation, sodomy, bestiality, fellatio, or cunnilingus. This prohibition does not apply to any publicly broadcast television transmission from a federally licensed station.

Plaintiffs brought this action under 42 U.S.C. § 1983, alleging that the statute and rules violate the First, Fifth, and Fourteenth Amendments,[3] and requesting declaratory and injunctive relief.  Plaintiffs moved for a preliminary injunction arguing that the statutes at issue were overbroad, void for vagueness, and in violation of the First Amendment.  On February 13, 2006, the district court issued an order denying their claim for a preliminary injunction, based on its rejection of plaintiffs' likelihood of success on the merits.

## II.

This Court normally reviews a district court's decision regarding a preliminary injunction for an abuse of discretion.  *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000) (*overruled on other grounds*, *City of Littleton v. Z. J. Gifts D-4, L.L.C.,* 541 U.S. 774, 784 (2004)). Four factors must be considered and balanced by the district court in making its determination: "(1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief." *Id.*  "'The district court's determination will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.'" *Id.* (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)).

The Court explained in *Nightclubs, Inc.* that in a First Amendment case, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits.  This is so because, as in this case, the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute." *Id.* (citations omitted).  Here, the likelihood of success on the merits is primarily a legal question, and there is little or no factual dispute.  Thus, even though the district court's denial of injunctive relief is generally reviewed for an abuse of discretion, because the issue before us is limited to the purely legal question of whether the district court "improperly applied governing law or used an erroneous legal standard," we review the district court's decision *de novo*.  *See Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (under the abuse of discretion standard in the context of a preliminary injunction, "we must review the district court's legal conclusions *de novo* and its factual findings for clear error").

---

[3]The Fifth and Fourteenth Amendment claims were based on alleged due process violations (despite the fact that the Fifth Amendment only prohibits due process violations by the federal government).  On appeal, plaintiffs appear to primarily rely on the First Amendment claim, although they include reference to the Fifth Amendment in their void for vagueness argument.  Because the case involves state law, the reference should be to the Fourteenth Amendment's due process clause, to the extent due process is a necessary component of a void for vagueness argument.

### A. Preclusion and Void for Vagueness

At the outset, the state suggests in its brief that the doctrine of res judicata (or claim preclusion) should bar the plaintiffs' action here in light of a prior suit that Hamilton's Bogarts brought challenging the Liquor Control Commission's Rule 11 after it was ticketed numerous times for violating the rule. In that action, heard by this Court on appeal, Bogarts challenged the Rule as unconstitutionally vague, which it again does here. *See Hamilton v. Roberts*, 165 F.3d 27 (Table), 1998 WL 639158, at *6-7 (6th Cir., Sept. 10, 1998) (unpublished opinion). This Court upheld the district court's rejection of this challenge at summary judgment, ruling that the provision was not vague whatsoever. *Id.*

In this argument, the state appears to confuse the doctrines of res judicata and collateral estoppel (issue preclusion). The state argues that "[t]his Court's prior determination in *Hamilton v. Roberts*, that Liquor Control Commission Rule 11 was not void for vagueness is *res judicata* as to Appellants' identical First Amendment challenge to that rule in this case." Appellees' Br. at 15. We "may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). In contrast, when considering the preclusive effect of a state court judgment, we must look to the law of that state. *Id.*; *see also* 28 U.S.C. § 1738. Because the judgment upon which the State relies for its preclusion argument was issued by a federal court, we look to federal law to determine its preclusive effect. This Court has described res judicata as "extinguish[ing] 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Walker v. General Tel. Co.*, 25 F. App'x 332, 336 (6th Cir. 2001). The broad sweep of res judicata is likely inapplicable here, as one of the required elements is that the issues raised in the subsequent action were raised or should have been raised in the first lawsuit. *Id.*[4] Here, although Rule 11 was challenged in the first lawsuit, Rule 9 was not, presumably because it was only Rule 11 under which Bogarts was penalized at the time. The state has not argued or made any showing that Bogarts should also have challenged Rule 9 at the time. Because the current suit also includes additional challenges to both Rules beyond void for vagueness claims, it would be inappropriate to apply res judicata to the plaintiffs' claims in their entirety.

Even so, the related and narrower doctrine of collateral estoppel may well affect the void for vagueness claim that has already been litigated. This Court has listed four requirements for the application of collateral estoppel:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*NAACP, Detroit Branch v. Detroit Police Officers Ass'n (DPOA)*, 821 F.2d 328, 330 (6th Cir. 1987).

---

[4] The elements of res judicata are, in their entirety, that "(1) there is a final decision on the merits of the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is identity of claims." *Walker v. General Tel. Co.*, 25 F. App'x 332, 336 (6th Cir. 2001).

Because collateral estoppel precludes future litigation of one specific issue, and because that is what the state effectively asks us to find, we construe their argument as one for collateral estoppel rather than res judicata, despite the substitution of one term for the other in the state's brief.[5]

The void for vagueness challenge to Rule 11 meets all four of the requirements for collateral estoppel, as it was actually litigated in the prior case, it was essential to the holding that Rule 11 was constitutional, there was a final judgment on the merits, and so far as we can tell, the plaintiffs had a full and fair opportunity to litigate the issue. With regard to the fourth element, the plaintiffs fail to address the preclusion issue at all in their brief, giving us little reason to conclude otherwise. Further, although Polzin was not a named party in the first suit, this Court has stated that collateral estoppel extends to "privies" of the party to the first lawsuit. *Verizon North Inc. v. Strand*, 367 F.3d 577, 583 (6th Cir. 2004); *see also Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 850 n.5 (6th Cir. 2006) (stating that employee who shares interest in litigation with his employer is in privity with employer for collateral estoppel purposes). Because Polzin has an employment relationship with Bogarts, shares a common legal interest in the outcome of this claim with Bogarts, and has presented us with no argument as to why she should not be precluded based on her employer's prior litigation of an identical claim, we conclude that collateral estoppel can apply against both plaintiffs here with respect to the void for vagueness challenge to Rule 11.

Although the vagueness challenge to Rule 9 was not actually litigated, and therefore cannot be collaterally estopped, the prior panel's rationale provides persuasive authority for rejecting the void for vagueness challenge to Rule 9. *See Hamilton*, 1998 U.S. App. Lexis 22653, at * 21 ("[T]here can be no doubt as to what conduct the rule prohibits."). If anything, Rule 9 is less vague than Rule 11, as it specifically defines body parts that cannot be exposed in a licensed premises. Plaintiffs seize on the words "other type of nudity" used in Rule 9. On its own, this term could well be considered vague, but the full clause in which it is used makes clear that in addition to the Rule's independent prohibitions, it also prohibits "other types of nudity prohibited by statute or local ordinance." Thus, the clause in question would appear to simply seek to avoid preempting the application of any other state laws or local ordinances that ban nudity. Even if it might be confusing that nudity is governed by more than one statute or ordinance, this provision does not make Rule 9 itself vague, as the nudity it prohibits is fairly well defined. If there are indeed other statutes or local ordinances that prohibit nudity and are incorporated into this rule, plaintiffs' would have to at least identify them for us before we can say that they are vague. For these reasons we affirm the district court's rejection of the plaintiffs' void for vagueness argument with respect to both rules.

## B. Plaintiffs' First Amendment Challenge

### 1. Implications of the Twenty-First Amendment

In rejecting the plaintiffs' First Amendment claim, the district court relied on *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 715 (1981) and *California v. LaRue*, 409 U.S. 109 (1972). D. Ct. Op. at 6, 8. The rationale of these cases was that under the authority granted to the states in the Twenty-first Amendment to regulate liquor sales, a state could prohibit nude dancing in places where liquor is sold. The state relies almost entirely on this reasoning here. Unfortunately for the state, the Supreme Court has entirely abandoned this rationale for upholding regulations that raise First Amendment concerns in places where alcohol is sold. *See 44 Liquormart v. Rhode Island*, 517 U.S. 484, 516 (1996) ("Without questioning the holding in *LaRue*, we now disavow its reasoning insofar as it relied on the Twenty-first Amendment. As we explained in a case decided more than a decade after *LaRue*, although the Twenty-first Amendment limits the effect of the dormant Commerce Clause on a State's regulatory power over the delivery or use of intoxicating

---

[5]Latin is a dead language anyway.

beverages within its borders, 'the Amendment does not license the States to ignore their obligations under other provisions of the Constitution.' . . . . Accordingly, we now hold that the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment."); *see also Odle v. Decatur County*, 421 F.3d 386, 398 (6th Cir. 2005) ("*LaRue*'s rationale is no longer good law."). Because the *Bellanca* case relied on the same constitutional justifications as *LaRue*, the subsequent decision in *Liquormart* abrogated its reasoning as well.

In reaffirming the **holding** of *LaRue*, the *Liquormart* Court stated that "the Court has recognized that the States' inherent police powers provide ample authority to restrict the kind of 'bacchanalian revelries' described in the *LaRue* opinion regardless of whether alcoholic beverages are involved." 517 U.S. at 515. Thus, a state is allowed implement restrictions on nude dancing to combat the "secondary effects" that are likely to arise from the combination of liquor and nude dancing. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 293, 296-97 (2000). Although liquor consumption may well be a valid factor in a state's consideration of secondary effects, it is no longer correct to argue that the Twenty-first Amendment provides greater authority to regulate expressive conduct wherever liquor is sold.

### 2. Content based or content neutral?

The Supreme Court has stated that "nude dancing . . . is expressive conduct," while nudity itself is not. *Id*. at 289. As a result, laws that limit nude dancing are subject to First Amendment scrutiny under one of two alternative standards of review. If "the governmental purpose in enacting the regulation is unrelated to the suppression of expression," then the law need only satisfy the intermediate scrutiny inquiry from *United States v. O'Brien*, 391 U.S. 367 (1968). *Pap's A.M.*, 529 U.S. at 289. If, on the other hand, the "government interest is related to the content of the expression, . . . then the regulation falls outside the scope of the *O'Brien* test and must be justified under a more demanding standard." *Id*. Thus, under the Supreme Court's precedent, the threshold question is whether the regulations here are content based — i.e. are they specifically directed at nude dancing — or do the terms of the regulations target conduct alone. *Id*. [6]

The distinction between content-based and content-neutral regulations is critical to their validity, as it has great bearing on the justifications the state must raise to defend the rules. Where a regulation is content-based, it is "considered presumptively invalid and subject to strict scrutiny." *City of Los Angeles v. Alameda Books*, 535 U.S. 425, 434 (2002). To satisfy the strict scrutiny inquiry in the context of the First Amendment "the State must show that its regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end." *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 118 (1991) ("If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). On the other hand, under *Pap's A.M.*, content-neutral restrictions must meet the four-part intermediate scrutiny test from *O'Brien*, which requires a showing that 1) the regulation is within the constitutional power of the government to enact, 2) the regulation furthers an important or substantial government interest, 3) the government interest must be unrelated to the suppression of free expression, and 4) the restriction must be no greater than is essential to the furtherance of the government interest. *Pap's A.M.*, 529 U.S. at 296-301.

---

[6] The Supreme Court plurality applied this approach in *Pap's A.M.* as follows: "The ordinance here, like the statute in *Barnes*, is on its face a general prohibition on public nudity. By its terms, the ordinance regulates conduct alone. It does not target nudity that contains an erotic message; rather, it bans all public nudity, regardless of whether that nudity is accompanied by expressive activity." 529 U.S. at 290 (discussing *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991) (citations omitted)).

Unfortunately, instead of addressing whether the regulations are content-based or content-neutral and articulating any state interest that is furthered by the regulations, the state merely relies on its "broad discretion" under *LaRue*. As a result of this approach we have very little guidance in analyzing the relevant factors. We do not doubt that it is within the state's police power to pass a nudity ban, to regulate places where liquor is sold, and to combat secondary effects that might be related to adult entertainment. But we are left to guess about the governmental interest at stake and how it is advanced by Rules 9 and 11,[7] not to mention the critical question of which standard governs this case.

Assuming arguendo that the lesser standard of intermediate scrutiny applies, it would not be a difficult one to meet, but it is not toothless, and requires **some** showing of an important or substantial interest that the regulations are essential to address. *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 664 (1994) ("When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply 'posit the existence of the disease sought to be cured.' It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." (citation omitted)). Yet not only does the state fail to produce any evidence regarding secondary effects or the impact of its rule, but it fails to even articulate what its interest is or how the regulations affect it.

There are alternative, valid reasons to view the regulations in question here under either standard, but we need not address this threshold question because the state has advanced no relevant governmental interest and made no showing as to how Rules 9 and 11 advance such an interest. The Rules therefore cannot survive either strict or intermediate scrutiny. Accordingly, because the plaintiffs have made the requisite showing of success on the merits, a preliminary injunction should issue.

## C. Overbreadth and Balancing of the Harms

Plaintiffs raise two final arguments, that the Rules are impermissibly overbroad in violation fo the First Amendment and that the district court improperly balanced the harms to them and to the public against those of the government in denying them a preliminary injunction. While we note that plaintiffs' appear to have a stronger case for overbreadth than even the plaintiffs in *Odle* and *Triplett Grill, Inc. v. City of Akron*, 40 F.3d 129 (6th Cir. 1994), where we held the statutes at issue would proscribe expressive conduct in theatrical and other types of performances which there is no reason to believe had any negative secondary effects and were therefore impermissibly overbroad, it is not necessary for us to engage in an in-depth analysis of plaintiffs' overbreadth and balancing of the harms arguments in light of our holding above.

---

[7]Nor are these inherently straightforward questions that we would somehow be suited to address on an undeveloped record. The Supreme Court's opinion in *Pap's A.M.* demonstrates the complicated nature of the analysis. Although five Justices voted to uphold the regulation in *Pap's A.M.*, two of them, Justices Scalia and Thomas, relied primarily on their determination that the case was moot and that the plaintiff lacked standing, reasoning alternatively that the city could ban nude dancing based on a determination that it was immoral, without facing First Amendment limitations. 529 U.S. at 310 (Scalia, J., concurring). As a result, only a plurality of four Justices applied the *O'Brien* intermediate scrutiny test, and found that the regulation met its requirements. Justice Souter, writing in dissent, agreed that this test applied, but disagreed that the city met its burden, due to a dearth of evidence regarding "the harm [the city] claims to flow from the expressive activity, and for the alleviation expected from the restriction imposed." *Id*. at 313 (Souter, J., dissenting). There thus appears to be a difference in the evidentiary standard that the plurality and Justice Souter would require, with the plurality endorsing the government's reliance on prior judicial opinions that addressed secondary effects, and the findings expressed by the Erie City Council in its preamble to the ordinance. *Id*. at 296-298.

III.

We hold that preliminary injunctive relief is necessary in this case. Of course the proceedings remain in the preliminary stages, and hopefully the case will be litigated differently after remand.[8] Accordingly, we **REVERSE** the district court's denial of plaintiffs' motion for preliminary injunction, and **REMAND** with instructions to grant plaintiffs' motion and issue a preliminary injunction.

---

[8] It is also worth noting that the state itself is not a properly named defendant, as it is shielded from suit under the doctrine of sovereign immunity. States are protected by the Eleventh Amendment even from suits brought under section 1983, because the statute only creates a cause of action against a "person" who causes the deprivation of another's Constitutional rights. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Suits against state officials in their official capacity for money damages are similarly barred, as a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Id*. The same is not true for suits seeking only injunctive relief: "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id*. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

---

**CONCURRENCE**

---

ALICE M. BATCHELDER, Circuit Judge, concurring. I concur in Judge Martin's opinion. I write separately only to express my suspicion that, like the reports of Mark Twain's death, *see The New Dictionary of Cultural Literacy* (Third Edition, 2002), the report of the death of Latin in the majority opinion's footnote 5 is greatly exaggerated.