*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0002p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                              *Plaintiff-Appellee,*

            *v.*                                              Nos. 10-5799/5800

CONTENTS OF ACCOUNTS, et al.,
                                        *Defendants,*

ISRAEL CHAVEZ, CHAVEZ, INC. (10-5799);
PAMELA CHAVEZ, PAMELA CHAVEZ, INC.
(10-5800),
                              *Claimants-Appellants.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 10-00228—John G. Heyburn II, District Judge.

Decided and Filed: January 4, 2011

Before: BOGGS and McKEAGUE, Circuit Judges; QUIST, Senior District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Christie A. Moore, GREENEBAUM DOLL & McDONALD PLLC, Louisville, Kentucky, Kent Wicker, REED WICKER PLLC, Louisville, Kentucky, for Appellants. Amy M. Sullivan, Monica Wheatley, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

_____

[*]The Honorable Gordon J. Quist, Senior United States District Judge for the Western District of Michigan, sitting by designation.

———————————

**OPINION**

———————————

QUIST, District Judge.   Alleging, among other things, mail and wire fraud relating to the interstate sale of cigarettes, the government has seized numerous bank accounts and other assets belonging to Chavez, Inc., Israel Chavez, and Pam Chavez (collectively "Defendants"), and initiated civil forfeiture proceedings pursuant to 18 U.S.C. § 981(a)(1)(C).  In a June 18, 2010 order, the district court denied Defendants' motions, which sought either dismissal of the forfeiture complaint or, in the alternative, a preliminary injunction ordering the return of their property pending disposition of the case.  With this appeal, Defendants challenge both aspects of the order: (1) that the district court erred in denying the motion to dismiss; and (2) that the district court erred in holding that preliminary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure is not available to civil forfeiture claimants.  We affirm the district court as to the latter, and do not reach the merits of the former for lack of jurisdiction.

**I.  BACKGROUND**

Because the facts of this case are thoroughly detailed in the district court order from which this appeal is taken and are not of great relevance to our disposition here, we repeat them only briefly.  After its incorporation in 2005, Chavez, Inc. rapidly grew into a multi-million dollar business.  Its business model is simple: purchase cigarettes from bulk-food stores in the state with the lowest cigarette tax rate in the nation and sell them online to consumers in other states, whose local retailers must charge higher prices due to their states' higher tax rates.  Although the sales still create tax liability owed to the consumers' states, the obligation to pay those taxes rests with the end-consumer, not Chavez, Inc.  Thus, Chavez, Inc.'s website warns its customers that it is the customers' duty to comply with all local and state laws regarding cigarette use and sales, including tax laws.  Importantly, however, the warning also makes clear to customers that Chavez, Inc. will not be reporting any sales to the state, despite its obligation to do so.

Under the Jenkins Act, 15 U.S.C. §§ 375 to 378, interstate cigarette vendors, such as Chavez, Inc., are required to register with all states to whose residents they sell cigarettes and to file reports with the state tobacco tax administrators providing each purchaser's name and address and the quantity and brand of cigarettes sold. 15 U.S.C. § 376(a)(1)-(2). These disclosures are meant to aid the states in collecting taxes from consumers, whose cigarette purchases might otherwise go undetected. *Id.* § 376(c). Chavez, Inc. admits that it is fully aware of the Jenkins Act's requirements and chooses not to comply. Indeed, Chavez, Inc. has never filed a Jenkins Act report with any state.

In light of this and other alleged illegal activity, the government sought, obtained, and executed search and seizure warrants in December 2009, seizing substantially all of the assets of Chavez, Inc., along with personal bank accounts and other assets owned by Israel and Pam Chavez that could allegedly be traced to Chavez, Inc. income. In April 2010, the government initiated this civil forfeiture proceeding. The Complaint accuses Defendants of engaging in mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, by selling and shipping cigarettes interstate without filing Jenkins reports in a scheme to defraud state governments of tax revenues, and of violating the Contraband Cigarette Trafficking Act (CCTA), 18 U.S.C. § 2342, by selling cigarettes that do not bear evidence of state or local taxes having been paid, all of which are "specified unlawful activities" under 18 U.S.C. § 1956(c)(7)(A), making the property subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

On May 5, 2010, Defendants filed motions to dismiss the forfeiture complaint or for a preliminary injunction ordering the return of their property pending disposition of the case. The district court held a preliminary injunction hearing on May 14, 2010, after which it entered two interim orders requiring the return of Defendants' personal property and granting the government time to respond to Defendants' motions. On May 17, 2010, the government filed a motion to vacate the district court's interim orders, arguing that 18 U.S.C. § 983(f) implicitly divested the court of authority to grant preliminary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure. Four days later, the government filed its response to Defendants' motions. In a

memorandum opinion entered June 18, 2010, the district court addressed both Defendants' motions to dismiss or for preliminary injunctive relief, which it denied, and the government's motion to vacate the interim orders, which it granted.

The district court first addressed Defendants' motions to dismiss, which argued that, as a matter of law, a mere Jenkins Act violation cannot support a mail fraud claim.[1] Individually addressing each of the elements of mail fraud, the district court concluded that "Chavez, Inc.'s sale of cigarettes to out-of-state customers without filing the required Jenkins Act report probably does meet the elements of mail fraud." (Mem. Op. at 7.)[2]

First, citing Chavez, Inc.'s business structure, the court found that Defendants "knowingly devised a scheme to defraud the victim of money or property." (*Id.*) The court explained, "Chavez, Inc.'s business success actually depended on customers not paying state and local taxes. If the customers were going to pay the taxes owed on the purchases, then [they] would have been better off purchasing their cigarettes from local retailers and avoiding increased shipping costs." (*Id.* at 7-8.) Therefore, Chavez, Inc. informed its customers that it did not file Jenkins reports, "essentially assur[ing] them that they could avoid paying state taxes." (*Id.* at 8.) Citing *Pasquantino v. United States*, 544 U.S. 349, 355 (2005), the district court rejected Defendants' argument that the government's interest in taxes is not a "property" interest sufficient for mail fraud. Second, Defendants' "scheme included a material misrepresentation or omission." (*Id.*) As the district court noted, although the Sixth Circuit has yet to address whether failure to file Jenkins Act reports constitutes a "material" omission, "[n]umerous courts have addressed this issue over the years and every single one, without exception, has held that such a failure to report is actionable as mail fraud." (*Id.* at 9.) Finally, the district

---

[1] Because the mail and wire fraud statutes share the same language in relevant part, the district court properly analyzed them together. *United States v. Daniel*, 329 F.3d 480, 486 n.1 (6th Cir. 2003). To the extent we discuss mail and wire fraud, we will do the same, and any references to mail fraud also apply to wire fraud.

[2] Because the district court found that Defendants' conduct likely constituted mail fraud, it did not reach the merits of Defendants' second challenge to the Complaint, that their conduct did not constitute a violation of the CCTA. (Mem. Op. at 14.)

court concluded that the last two elements – intent to defraud and use of the mails in furtherance of the scheme – were easily satisfied. (*Id.* at 12.)

The district court then addressed the propriety of Defendants' request for injunctive relief under Rule 65. The court explained that because this is a civil forfeiture case, it is subject to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Supp. R. Fed. R. Civ. P. A(1)(B). Supplemental Rule A(2) makes clear that the Federal Rules of Civil Procedure also apply to such actions, "except to the extent that they are inconsistent" with the Supplemental Rules. Supplemental Rule G(8), which describes the motions that claimants can bring in forfeiture actions, specifically invokes 18 U.S.C. § 983(f) as the means to "Petition to Release Property." Supp. R. Fed. R. Civ. P. G(8)(d)(i). Thus, the district court explained, the issue was "whether the application of Rule 65 is inconsistent with the Supplemental Rules, specifically Rule G(8)(d), which incorporates Section 983(f)." (Mem. Op. at 16.)

Accurately noting that there is no case law specifically addressing this issue, the district court examined the language and purpose of § 983(f) and Rule G. First, the court noted, whereas Rule 65 is "an all-purpose tool," Rule G, via § 983(f), is specifically designed for civil forfeiture actions. Moreover, the court explained, § 983(f) and the Civil Asset Forfeiture Reform Act, 18 U.S.C. § 983, of which it is part, were enacted specifically to rectify some of the severe results of civil forfeitures and yet only allowed hardship to be considered in very narrow circumstances. (*Id.* at 18.) Thus, "it seems unlikely that Congress, in writing the statute, intended to open the door to other, broader claims of hardship," such as Rule 65's balancing test. (*Id.*) Therefore, the district court concluded that Rule 65 was inconsistent and inapplicable.

Finally, because Defendants had raised other issues, and in order to avoid any due process concerns, the court granted Defendants an evidentiary hearing to challenge the basis for forfeiture and outlined the procedure to be applied. (*Id.* at 20-21.) On July 1, 2010, before any such hearing was scheduled, Defendants filed a notice of interlocutory appeal pursuant to 28 U.S.C. § 1292 to challenge the district court's denial of their motion for injunctive relief.

With this appeal, Defendants argue that, contrary to the district court's conclusion, preliminary injunctive relief under Rule 65 is available to civil forfeiture claimants and that they satisfy all of the requirements necessary to obtain such relief. In addition, and the issue to which the greater portion of their briefing is dedicated, Defendants argue that the district court erred in denying their motion to dismiss. Specifically, Defendants claim that the district court erred in concluding that a mere Jenkins Act violation can serve as the basis for mail fraud, at least where, as here, Defendants have openly advertised their failure to comply and informed their customers that it is the customers' duty to pay any applicable taxes.

## II. ANALYSIS

### A.    Jurisdiction

The district court has jurisdiction over this forfeiture action pursuant to 28 U.S.C. §§ 1345 and 1355. We have interlocutory jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) to review the district court's denial of preliminary injunctive relief. That jurisdiction does not extend to the district court's denial of Defendants' motion to dismiss, however, which is neither a "final order" appealable under 28 U.S.C. § 1291, nor an interlocutory order immediately appealable under 28 U.S.C. § 1292. Thus, although Defendants dedicate the greater portion of their briefs to the merits of their motion to dismiss, we may not reach that issue unless it falls within our pendent appellate jurisdiction, the scope of which we recently summarized as follows:

> The doctrine of pendent appellate jurisdiction allows an appellate court, in its discretion, to exercise jurisdiction over issues that are not independently appealable, but are "inextricably intertwined" with matters over which the appellate court properly and independently has jurisdiction. *Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 797 (6th Cir.1998). However, the "inextricably intertwined" requirement is not meant to be loosely applied as a matter of discretion. *Id.* Rather, the "inextricably intertwined" requirement is satisfied only if the resolution of the properly appealable issue "necessarily and unavoidably" decides the non-appealable issue. *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 348 (6th Cir.2010). "A pendent appellate claim can be regarded as 'inextricably intertwined' with a properly reviewable

> claim only if the pendent claim is 'coterminous with, or subsumed in, the claim before the court on interlocutory appeal.'" *O'Bryan v. Holy See*, 556 F.3d 361, 378 n. 7 (6th Cir.2009) (quoting *Chambers*, 145 F.3d at 797).

*Bates v. Dura Auto. Sys*., *Inc*., 625 F.3d 283, 286-87 (6th Cir. 2010). Because we are able to resolve the appealable issue, the propriety of the district court's denial of preliminary injunctive relief without reaching the non-appealable issue, its denial of Defendants' motion to dismiss the complaint, we cannot say that the two are "inextricably intertwined." Therefore, we find no basis to review the motion to dismiss as part of this appeal.

**B.     Standard of Review**

Generally, this court reviews the denial of preliminary injunctive relief for an abuse of discretion. *See Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007). The issue here is not simply whether the district court properly applied the four-factor balancing test used in deciding whether to grant such relief, however. *Id.* It is whether preliminary injunctive relief under Rule 65 is available to civil forfeiture claimants at all, a purely legal question, which this court reviews de novo. *See Lockhart v. Napolitano*, 573 F.3d 251, 254 (6th Cir. 2009).

**C.     Section 983(f) is Inconsistent with Injunctive Relief under Rule 65**

As the district court properly explained, civil forfeiture actions such as this are governed by the Supplemental Rules and, to the extent they are not "inconsistent," the Federal Rules of Civil Procedure. Supp. R. Fed. R. Civ. P. A(1)(B) and (A)(2). The question presented in this case is one of first impression: whether the exercise of preliminary injunctive relief under Rule 65 to order the release of seized property would be "inconsistent" with the procedure set out in Supplemental Rule G for the release of seized property, namely, a petition for release under § 983(f). We find that it would.

We begin with Rule 65 of the Civil Rules. When deciding whether to grant preliminary injunctive relief under Rule 65, four factors are to be considered:

(1) whether the moving party has a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003). These four considerations are "factors to be balanced, not prerequisites that must be met." *Id.* Whereas Rule 65 is of general applicability, Supplemental Rule G and § 983(f), which Rule G expressly invokes, are specifically tailored for civil forfeiture proceedings.

Section 983(f) is a product of the Civil Asset Forfeiture Reform Act (CAFRA), 18 U.S.C. § 983, which Congress enacted in 2000 in an effort to "make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures." H.R. Rep. No. 106-192, at 8 (1999). The provision outlines the circumstances under which civil forfeiture claimants are entitled to immediate release of seized property and the procedure to be followed in obtaining such relief.

To establish release of seized property, the claimant must demonstrate that the following requirements, listed in paragraph (1), are satisfied:

(A) the claimant has a possessory interest in the property;

(B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;

(C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;

(D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and

(E) none of the conditions set forth in paragraph (8) applies.

18 U.S.C. § 983(f)(1), (6). Paragraph (8) in turn, denies relief where the property:

(A) is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized;

(B) is to be used as evidence of a violation of the law;

(C) by reason of design or other characteristic, is particularly suited for use in illegal activities; or

(D) is likely to be used to commit additional criminal acts if returned to the claimant.

*Id.* § 983(f)(8). Procedurally, § 983(f) requires that the claimant first seek relief directly from the appropriate official. *Id.* § 983(f)(2). If the property is not released within fifteen days, the claimant may then file a petition with the appropriate district court detailing "(i) the basis on which the requirements of paragraph (1) are met; and (ii) the steps the claimant has taken to secure release of the property from the appropriate official." *Id.* § 983(f)(2)-(3). If the petition is granted, the statute also authorizes the court to "enter any order necessary to ensure that the value of the property is maintained while the forfeiture action is pending." *Id.* § 983(f)(7). Thus, § 983(f) provides a detailed and comprehensive mechanism for obtaining the release of seized property, but also strictly limits the situations in which such relief is available.

Defendants stress that the Supplemental Rules expressly incorporate the Civil Rules, including Rule 65, except where the two are actually "inconsistent." There is no inconsistency, Defendants contend, between Rule 65 and § 983(f). Rather, they argue, Rule 65 requires that Defendants demonstrate a likelihood of success on the merits while § 983(f) instead assumes that the government had a proper basis for the forfeiture. Thus, Defendants argue, § 983(f) is best viewed as a "supplement to Rule 65 for those claimants who cannot show a likelihood of success on the merits, rather than as a replacement for it." (Defs.' Br. at 30.)

We reject the argument that § 983(f) should be construed merely as a supplement to Rule 65 preliminary injunctive relief for a number of reasons. Most importantly, the two are "inconsistent" in that § 983(f) provides relief under much more narrow

circumstances than potentially permissible under Rule 65. For example, to be entitled to release under § 983(f), Defendants would have to establish that each of the factors listed in paragraph (1) are satisfied. The factors considered under Rule 65 not only differ from those required for release under § 983(f), but are also merely "factors to be balanced, not prerequisites that must be met." *Jones*, 341 F.3d at 476. So, for example, a person with absolutely no ties to the community may be entitled to preliminary injunctive relief under Rule 65, but would be denied such relief under § 983(f). Moreover, relief under § 983(f) is completely foreclosed where any of the provisions of paragraph (8) apply, including where the property is "contraband, currency, or other monetary instrument, or electronic funds," as is the case here, "unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business that has been seized." 18 U.S.C. § 983(f)(8)(A). Thus, Defendants would not be entitled to release under § 983(f) unless they can show that Chavez, Inc. constitutes a "legitimate business that has been seized," something they would not have to do to obtain a preliminary injunction under Rule 65. We agree with the district court that "[b]ecause CAFRA was enacted to rectify some of the particularly severe results of civil forfeitures and it only allowed hardship to be considered under the narrow circumstances described above, it seems unlikely that Congress, in writing the statute, intended to open the door to other, broader claims of hardship." (Mem. Op. at 18.)

Second, that the Civil Rules apply "except to the extent that they are inconsistent," is laid out in Supplement Rule A, which sets out the scope of the Supplemental Rules in general. Supplemental Rule G, which applies exclusively to "Forfeiture Actions in Rem," and was designed to "bring together the central procedures that govern" such actions, states as follows:

> This rule governs a forfeiture action in rem arising from a federal statute.
> To the extent that this rule does not address an issue, Supplemental Rules
> C and E and the Federal Rules of Civil Procedure also apply.

Supp. R. Fed. R. Civ. P. G(1) and advisory committee's note. Accordingly, it is only where Rule G does not address an issue that the Civil Rules set the procedure governing forfeiture actions. *See e.g.*, Supp. R. Fed. R. Civ. P. G Advisory Committee Notes

Subdivision (1) ("Rule G, for example, does not address pleadings amendments. Civil Rule 15 applies, in light of the circumstances of a forfeiture action."). It is unclear how Rule G, which specifically invokes § 983(f) as the mechanism to "Petition to Release Property," does not "address" the issue of obtaining the release of seized property. Supp. R. Fed. R. Civ. P. G(8)(d).

Finally, Defendants suggest that § 983(f) is best viewed as a supplement to Rule 65 "for those claimants who cannot show a likelihood of success on the merits." (Defs.' Br. at 30.) Defendants provide no support for this argument, however, nor has legal research revealed any. Indeed, the legislative history behind § 983(f) refutes the argument:

> Even should a property owner prevail in a civil forfeiture proceeding, irreparable damage may have been done to the owner's interests. For instance, if property is used as a business, its lack of availability for the time necessary to win a victory in court could have forced its owner into bankruptcy. If the property is a car, the owner might not have been able to commute to work until it was won back. If the property is a house, the owner may have been left temporarily homeless (unless the government let the owner rent the house back). In cases such as this, *even when the government's case is extremely weak*, the owner must often settle with the government and lose a certain amount of money in order to get the property back as quickly as possible.

H.R. Rep. No. 106-192, at 11 (1999) (emphasis added). Thus, the potential weakness of the government's claim for forfeiture (i.e., the claimant's likelihood of success on the merits) was part of the motivation behind § 983(f), not an exception to its applicability. Moreover, in the event the government actually lacks a legal basis for forfeiture, nothing in our holding today prevents a civil forfeiture claimant from moving to dismiss the complaint under Rule 12(b), as Defendants have already done here. *See* Supp. R. Fed. R. Civ. P. G(8)(b) (specifically invoking Fed. R. Civ. P. Rule 12(b)). Nor does our holding limit civil forfeiture claimants' ability to contest the government's basis for forfeiture in any post-deprivation, pre-trial hearing to which they may be entitled by due process. *See United States v. Melrose East Subdivision*, 357 F.3d 493, 500 (5th Cir. 2004) (assuming, without deciding, that due process may require post-restraint hearings

"in certain circumstances" in the civil forfeiture context).  Although the propriety of its ruling is not before us today, the district court has already granted Defendants such a hearing and laid out the procedure to be applied.  (Mem. Op. at 20.)

### III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's refusal to grant preliminary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.  We do not reach its refusal to dismiss the complaint due to lack of jurisdiction over that issue.