NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0010n.06

No. 08-2015

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jan 06, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| ADRON L. FLOYD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| COUNTY OF KENT, et al., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | OPINION |
| | ) | |

Before: BOGGS, SUHRHEINRICH, and STRANCH, Circuit Judges.

JANE B. STRANCH, Circuit Judge. Adron Floyd was incarcerated for six and one-half years after a Michigan state judge imposed an incorrect sentence. Floyd filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that his trial attorney, Timothy Haynes, Unknown Trainer(s), Kent County, Unknown Parole Board Members, Governor Jennifer Granholm, and the State of Michigan violated his federal constitutional rights. Upon initial screening, the district court *sua sponte* dismissed the *in forma pauperis* complaint under 28 U.S.C. § 1915A(b)(1), concluding that Floyd failed to state a claim against any defendant. We **AFFIRM**.

*Floyd v. County of Kent, et al.*
No. 08-2015

## I.  FACTUAL BACKGROUND[1]

In February 1999, the State of Michigan charged Floyd in Kent County with conspiracy to deliver less than 50 grams of a mixture containing cocaine, in violation of Mich. Comp. Laws § 750.157(a) (1998), and manufacture, delivery, or possession with intent to manufacture or deliver less than 50 grams of a mixture containing cocaine, in violation of Mich. Comp. Laws § 333.7401(2)(a)(iv) (1998).  As to the latter count, the felony information provided that the penalty for conviction on that charge was a minimum of one year to a maximum of twenty years, a fine of up to $25,000, or probation for life.  The information also stated that the court had authority to depart from the minimum term if the court found on the record that there were substantial and compelling reasons to depart.  The information further stated that Floyd could face an enhanced sentence because he had been previously convicted of a felony drug offense.  The Kent County Circuit Court appointed attorney Timothy Haynes to represent Floyd on the charges.

Floyd alleged that Haynes forced him to waive his preliminary examination and instructed him to plead guilty to the charge of possession with intent to deliver cocaine without conducting any investigation into the case or discussing any potential defenses with Floyd.  He also alleged that, after pleading guilty to the charge, he informed Haynes that he wanted to withdraw his guilty plea, but Haynes pressured him not to withdraw the plea.

---

[1]We glean the facts from the *pro se* complaint and its attachments.  We may consider exhibits attached to the complaint so long as they are referred to in the complaint and are central to the claims.  *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).

The sentencing hearing occurred in April 1999. Floyd alleged that Haynes was unprepared for sentencing, Haynes did not mention the correct sentencing guidelines, and Haynes guessed about what the appropriate sentence would be. However, the sentencing transcript, which is attached to the complaint, contradicts Floyd's allegations.

According to the transcript, Haynes confirmed that he had read the presentence investigation report and provided a copy of it to Floyd. Haynes acknowledged that Floyd's sentencing guidelines range was 0 to 11 months and that Floyd also faced a statutory mandatory minimum sentence of 1 to 20 years. *See* Mich. Comp. Laws § 333.7401(2)(a)(iv) (1999). But Haynes argued that the judge still possessed authority to impose a sentence of probation. His argument was supported by section § 333.7401(2)(a)(iv), which provided that an offender "shall be imprisoned for not less than 1 year nor more than 20 years, and may be fined not more than $25,000.00, or placed on probation for life[,]" and by Mich. Comp. Laws § 769.34(4)(b) (1999), which provided (emphasis added): "If the offense is a violation of [§ 333.]7401(2)(a)(iv) . . . and the upper limit of the recommended minimum sentence range is 18 months or less, the court *shall impose a sentence of life probation absent a departure*." Haynes specifically asked the court not to depart from the guidelines because any departure would obviate the mandatory sentence of probation called for in § 769.34(4)(b). Instead, he asked the court to impose an intermediate sanction of probation with tether restrictions.

The sentencing judge ignored Haynes's argument that the sentencing statutes mandated a sentence of probation. The judge imposed the statutory mandatory minimum sentence of 1 to 20 years in prison with a recommendation for drug treatment, explaining that he had been taught in training that statutory mandatory minimum terms trumped the sentencing guidelines if the two were

3

in conflict. Due to Floyd's prior drug conviction and his guilty plea to conduct that was "something more than the typical user-dealer activity on the street," the court determined the statutory mandatory prison sentence was appropriate and proportional. Floyd did not appeal.

Over two and one-half years later, Floyd filed a *pro se* motion for relief from judgment. The trial court denied the motion, expressly finding that Floyd failed to show his trial counsel's performance fell below an objective standard of reasonableness, that Floyd could not challenge the sufficiency of the evidence because he pled guilty to the charge, and that the reasons for the sentence were adequately set forth on the record of the sentencing hearing. The Michigan Court of Appeals denied Floyd's application for leave to appeal.

In 2005 the Michigan Supreme Court considered Floyd's further application for leave to appeal. The court vacated Floyd's sentence, remanded the case, and instructed the trial court to either impose a sentence of life probation or articulate on the record a substantial and compelling reason to depart from the sentencing guidelines range, as required by *People v. Babcock*, 666 N.W.2d 231 (Mich. 2003), a case decided after the trial court sentenced Floyd. In all other respects the court denied Floyd's application for leave to appeal and also explicitly denied Floyd's motion for peremptory reversal. These rulings left intact the trial court's determination that Floyd failed to establish ineffective assistance of trial counsel with regard to the conviction or the sentence.

On remand, the trial court sentenced Floyd to life probation and 12 months' time served. Floyd was discharged from prison on August 31, 2005, after serving more than six years.

Floyd then filed the instant § 1983 complaint alleging violation of his Sixth, Eighth, and Fourteenth Amendment rights due to his lengthy incarceration in violation of the sentencing statutes.

4

Floyd sought compensatory damages from Haynes and the Unknown Trainer(s) who trained the trial judge, in their individual capacity, for physical, emotional, and mental injuries Floyd sustained due to unlawful imprisonment. Floyd sought compensatory damages from Unknown Parole Board Members and Governor Granholm, in their official and individual capacities, because he brought the sentencing defect to their attention, but they did not recommend or grant a commutation or reprieve. Floyd further requested punitive damages from each of the named individual defendants, but he expressly did not seek damages from the State of Michigan.

In addition to his requests for damages, Floyd sought declaratory relief that: (1) the State of Michigan is obligated under the Sixth Amendment to the United States Constitution and Article I, § 20 of the Michigan Constitution to provide assistance of counsel to each criminal defendant who cannot afford private counsel; (2) Kent County's failure to provide adequate funding and oversight for the public defense system violated his Sixth and Fourteenth Amendment rights because adequate legal counsel is not provided to those accused of crimes who cannot afford to hire attorneys; (3) Kent County's failure to adopt training or qualification standards for appointed defense attorneys resulted in Haynes's ineffective assistance and Floyd's unlawful incarceration, in violation of the Sixth, Eighth and Fourteenth Amendments; (4) the refusal of unknown Parole Board Members to recommend, and Governor Granholm to grant, a commutation or reprieve when they were aware Floyd was unlawfully held in prison violated his Eighth and Fourteenth Amendment rights; (5) imprisonment contrary to § 769.34(4)(b) violated Floyd's Fourteenth Amendment due process rights; and (6) Haynes's ineffective assistance and the Unknown Trainer(s)' improper training of the judge violated Floyd's Sixth, Eighth, and Fourteenth Amendment rights.

5

The district court referred the complaint to the magistrate judge for initial screening under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b). The district court subsequently adopted a Report and Recommendation and dismissed the complaint for failure to state a claim.

## II. STANDARD OF REVIEW

This Court reviews *de novo* a district court's *sua sponte* dismissal of a prisoner's complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b). *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). When deciding whether a complaint states a claim for relief, all well-pleaded factual allegations are accepted as true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). The complaint must contain "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. A complaint suggesting "the mere possibility of misconduct" is insufficient. *Id.* at 1950. *Pro se* complaints are liberally construed, however, and are held to less stringent standards than the formal pleadings prepared by attorneys. *Williams*, 631 F.3d at 383.

## III. ANALYSIS

Section 1983 creates a civil cause of action against a defendant who, while acting under color of state law, deprives another person of the "rights, privileges or immunities secured by the Constitution or laws of the United States." *Barker v. Goodrich*, 649 F.3d 428, 432 (6th Cir. 2011) (quoted case omitted). To state a claim for relief under § 1983, "a plaintiff must allege a violation of a right secured by the federal Constitution or laws and must show that the violation was

6

committed by a person acting under color of state law." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th

Cir. 2010). We consider in sequence Floyd's claims against the named defendants.[2]

## A. Attorney Timothy Haynes

Floyd cannot state a claim for ineffective assistance against Haynes in this § 1983 suit.

Defense attorneys, whether compensated by the State or retained by a client, do not act under color

of state law when they perform a lawyer's traditional functions as counsel to the accused in a

criminal proceeding. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981).

## B. Unknown Trainer(s)

Floyd alleged in the complaint that the Unknown Trainer(s) incorrectly trained the sentencing

judge by providing an interpretation of sentencing statutes and guidelines that was contrary to

§ 769.34(4)(b), resulting in a period of unlawful confinement for Floyd. He specifically alleged that

the Unknown Trainer(s) acted negligently or through mistake.

Even assuming the Unknown Trainer(s) incorrectly trained the sentencing judge (a position

undercut by the sentencing transcript)–mere negligence or mistake, without proof of the culpable

mental state applicable to the underlying constitutional right alleged, cannot sustain a cause of action

under § 1983. *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008); *Ellis

v. Washington Cnty.*, 198 F.3d 225, 227 (6th Cir. 1999). Floyd did not identify where or for whom

---

[2]Floyd clarified in his reply brief that he no longer challenges the district court's rulings that the State of Michigan and the Unknown Parole Board Members are immune from liability for damages and that the complaint fails to state a claim against the Governor and Unknown Parole Board Members for their failure to grant Floyd a commutation or reprieve.

the Unknown Trainer(s) worked, but even further assuming that the Unknown Trainer(s) were state officials acting under color of state law, a negligent act causing unintended loss of liberty to Floyd does not implicate the Due Process Clause. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986).

On appeal, Floyd argues that he can pursue a theory of supervisory liability, but he does not explicitly identify any "supervisors," nor did he plead in the complaint any facts against supervisory defendants. Floyd may be contending that the Unknown Trainer(s) and certain unspecified "supervisory officials" had supervisory authority over the trial judge, improperly supervised the trial judge, or created a policy or custom under which the trial judge engaged in unconstitutional action. But if these are his claims, he has not cited any cases supporting such novel theories. Without legal support, any remand to allow Floyd to plead additional facts in an amended complaint would be futile.

Floyd further insists that he stated a due-process violation because he was deprived of liberty when the judge imposed a sentence that did not adhere to the State's own sentencing statutes and was not authorized by state law. Had Floyd promptly raised this argument on direct appeal, he may well have achieved reversal and remand for re-sentencing at that time, shortening the length of his imprisonment. The very purpose of direct review is to correct trial court errors, leading to finality of judgment. *See Lopez v. Wilson,* 426 F.3d 339, 351 (6th Cir. 2005) (en banc) (citing *Lambert v. Warden*, 81 F. App'x 1, 8 (6th Cir. 2003)). But Floyd did not appeal, and he waited more than two years after his sentencing to file a motion for relief from judgment, ultimately persuading the Michigan Supreme Court in 2005 to reverse the erroneous sentence and remand for re-sentencing.

In this § 1983 action seeking damages for the deprivation of liberty, Floyd did not name as a defendant the trial judge who made the sentencing error. Even if he had, the judge enjoys absolute immunity from a lawsuit seeking to hold him liable in damages for acts committed within his judicial jurisdiction. *See Pierson v. Ray*, 386 U.S. 547, 553-54 (1967); *Doe v. Boland*, 630 F.3d 491, 498 (6th Cir. 2011). Therefore, Floyd failed to state a claim against a proper defendant under the Due Process Clause.

## C. The State of Michigan, Governor Granholm, and Kent County

We turn now to Floyd's claims against the State of Michigan, Governor Granholm, and Kent County. Floyd fails to state a claim against any of these defendants.

Floyd sought a declaration that the State of Michigan and Governor Granholm are obligated under the Sixth Amendment to the United States Constitution and Article I, § 20 of the Michigan Constitution to provide effective assistance of counsel to each criminal defendant who cannot afford private counsel. He alleges that the failure to provide adequate funding for appointed attorneys and the failure to adopt training and qualification standards for appointed attorneys results in the provision of ineffective assistance of counsel to indigent defendants and specifically resulted in Haynes's ineffective assistance to Floyd.

Floyd cannot obtain the requested declaration against the State of Michigan because any form of relief sought against a State in federal court is barred under the Eleventh Amendment unless the State has waived its sovereign immunity. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 654 n.8 (6th Cir. 2007). Floyd did not allege that the State of Michigan

9

waived its sovereign immunity to suit. Therefore, any declaratory relief against the State of Michigan is barred by the Eleventh Amendment.

A federal court may impose prospective declaratory relief to compel a State official to comply with federal law "regardless of whether compliance might have an ancillary effect on the state treasury[.]" *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989), and *Ex parte Young*, 209 U.S. 123, 160-62 (1908)). For example, in *Luckey v. Harris*, 860 F.2d 1012, 1013-14 (11th Cir. 1988), the Eleventh Circuit allowed a suit to proceed against Georgia's Governor and the state judges responsible for providing assistance of counsel to indigent criminal defendants where the plaintiffs claimed that systemic deficiencies violated their constitutional rights. The state official sued, however, must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains. *See id.* at 1015-16.

In his complaint Floyd complained of inadequate funding, training, qualification, and oversight of attorneys appointed to represent indigent defendants, but he did not allege any facts showing how Governor Granholm is connected to, or has any responsibility for, the alleged Sixth Amendment violations, nor did he name as defendants any state judges or court administrators responsible for administering the criminal-defense system. *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 570. Therefore, the district court did not err in dismissing Floyd's Sixth Amendment claims against the State of Michigan and Governor Granholm.[3]

---

[3]The parties informed us that the adequacy of Michigan's indigent-defense system is being litigated in Michigan state courts in a class-action lawsuit. *Duncan v. State*, 774 N.W.2d 89 (Mich.

Floyd also did not state a claim for relief against Kent County for perceived deficiencies in providing counsel to indigent defendants. At the time of Floyd's sentencing, Michigan law placed responsibility for appointing an attorney for an indigent accused on the chief judge of the circuit court in the county where the offense occurred, and not directly on the county or its executive officials. Mich. Comp. Law § 775.16 (1999). The statute provided that appointed defense attorneys were paid from the county treasury, but only after the chief judge of the circuit court in that county certified that the appointed attorney rendered professional services and was entitled to receive reasonable compensation for the services performed.[4] *Id.* Floyd did not allege any facts in his complaint to show that an official policy, custom or practice of Kent County was the "moving force" behind any asserted violation of his constitutional rights by the circuit court. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010).

---

Ct. App. 2009), *aff'd on other grounds*, 780 N.W.2d 843 (Mich. 2010), *reconsideration granted and order vacated*, 784 N.W.2d 51 (Mich. 2010), *order vacated on reconsideration*, 790 N.W.2d 695 (Mich. 2010), *reconsideration denied*, 791 N.W.2d 713 (Mich. 2010). According to Floyd's appellate counsel, that case includes claims against the State of Michigan and the Michigan Governor, and the case has been remanded to the trial court for further proceedings.

[4]After Floyd was sentenced in 1999, Michigan Court Rule 8.123 was adopted in 2002, effective January 1, 2004. That rule currently provides that "[e]ach trial court must adopt a local administrative order that describes the court's procedures for selecting, appointing, and compensating counsel who represent indigent parties in that court." MCR 8.123(B). The State Court Administrator must approve the local administrative order. MCR 8.123(C). The rule also contains provisions requiring trial courts to submit certain annual reports to the State Court Administrator, including reports of the total public funds paid to each attorney for appointments by the court, and the public funds paid for appointments by each judge. MCR 8.123(D) & (F).

Finally, there is another reason why the district court properly dismissed Floyd's complaint. In his *pro se* pleading, Floyd challenged more than the erroneous sentence. He also alleged that his trial counsel did not conduct any investigation of his criminal case, forced him to waive his preliminary examination, and forced him to plead guilty, due in large part to systemic deficiencies. These allegations implicate Floyd's conviction, not his sentence.

In *Hadley v. Werner*, 753 F.2d 514, 516 (6th Cir. 1985) (per curiam), this Court affirmed dismissal without prejudice of a § 1983 suit challenging the Michigan system for appointing and compensating defense attorneys where the plaintiff had not yet attempted to establish through habeas corpus that he actually received ineffective assistance of state trial counsel. *See also Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007), this Court held that *Heck* did not bar a § 1983 suit challenging the Ohio public defender system where the defendant was in custody for only a short time and was thus foreclosed from challenging the incarceration in a habeas action. In *Miranda v. Clark Cnty.*, 319 F.3d 465, 470-71 (9th Cir. 2003) (*en banc*), the Ninth Circuit allowed a § 1983 suit challenging a policy of the county public defender's office to proceed where the plaintiff first obtained reversal of his state court conviction through habeas corpus.

Floyd stands in a worse position than the plaintiffs in *Hadley*, *Powers*, and *Miranda*. Floyd actually filed a motion for relief from judgment in state court collaterally attacking both his conviction and his sentence. While the Michigan Supreme Court vacated the erroneous sentence, it affirmed the trial court's determination on the merits that Floyd received the effective assistance of counsel during his criminal proceeding as required by the Sixth Amendment. The court also

12

denied Floyd's motion for peremptory reversal. Floyd did not further challenge the Michigan Supreme Court's ruling on ineffective assistance in a habeas corpus petition filed in federal court under 28 U.S.C. § 2254. Thus, the district court properly dismissed Floyd's § 1983 complaint as it relates to Floyd's conviction because he cannot show that the conviction was obtained as a result of ineffective assistance of trial counsel.

Although the defendants assert other reasons why we should affirm the dismissal order, we need not reach those arguments here.

## IV. CONCLUSION

Floyd's complaint fails to state a § 1983 claim for relief against any named defendant. Accordingly, we **AFFIRM**.